**BANKHEAD HOTEL, Inc. v. DAVIS, Collector of Internal Revenue.**

**Civ. A. 6701.**

United States District Court
N. D. Alabama, S. D.

May 7, 1953.

181

John W. Gillon and Frank M. Young, of Spain, Gillon, Grooms & Young, Birmingham, Ala., and F. A. Berry of Bass, Berry & Sims, Nashville, Tenn., for plaintiff.

John D. Hill, U. S. Atty., and W. R. Bradford, Asst. U. S. Atty., Birmingham, Ala. and Andrew D. Sharpe and Fred J. Neuland, Special Assts., to the Atty. Gen., for defendant.

LYNNE, District Judge.

This is a suit filed for refund of $80,051.75, claimed as additional excess profit tax for the two calendar years 1943 and 1944. It is submitted upon a stipulation of all material facts which center around the creation of three corporations, the Bankhead Hotel Company, hereinafter referred to as the Delaware corporation, formed in 1925, Bankhead Holding Company, Inc., hereinafter referred to as the holding company, formed in 1930, and Bankhead Hotel, Incorporated, plaintiff herein, formed in 1935.

The Bankhead Realty Company was organized July 23, 1925, but on October 19, 1925, its name was changed to Bankhead Hotel Company, the Delaware corporation. On August 25, 1925, it purchased realty at a cost of $225,000. A fifteen-story hotel was delivered for occupancy on January 1, 1927, at a cost basis of $1,100,000, with furniture at a cost of $250,000. In order to finance the construction, first mortgage 7% sinking fund gold bonds were issued in the amount of $950,000, secured by a first lien on the realty and furniture.

The Delaware corporation became indebted to three of its stockholders in the amount of $68,000 for notes they had endorsed and paid and in the amount of $112,662.50 on open account. These debts were transferred to the holding company which filed suit and recovered judgment by default against the Delaware corporation in the amount of $184,000. On August 15, 1930, the sheriff levied, pursuant to this judgment, upon the realty and personalty of the Delaware corporation. Execution sale was held August 28, 1930, for the personalty and September 22, 1930, for the realty, the holding company being the successful bidder in the amount of $500 and $200, respectively, paid by payment of costs and credit upon the judgment. These sales covered the equity of redemption only, being subject to the lien of the bonds and ad valorem taxes.

On November 1, 1930, the trustee representing the bondholders took possession of the property. On January 15, 1931, a bondholders protective committee was formed which solicited $774,600 of the face value of the bonds with coupons which had matured on or before November 1, 1930. The operation by the trustee for the bondholders proved unsuccessful and on December 19, 1934, the bondholders protective committee filed reorganization proceedings under Section 77B of the Bankruptcy Act using the holding company as the vehicle. On March 21, 1935, Bankhead Hotel, Incorporated, the plaintiff herein, was organized to take title to the properties involved in the reorganization and subsequently received these properties, conveyed by deed executed by the trustee for the bondholders and the holding company. The plaintiff corporation exchanged its debenture notes, common and preferred stock for the outstanding bonds. The old stockholders received nothing.

This case involves only a question of law as to the basis in the hands of the plaintiff taxpayer for income tax purposes

of the assets acquired by the plaintiff in the 1935 reorganization.

The plaintiff contends that the reorganization was tax-free under Section 112(b) (10) [1] and that the basis of its assets under Section 113(a)(22) [2] is the same as it would be in the hands of the transferor corporation. If this contention is followed, the court must decide if the basis is that of the Delaware corporation formed in 1925 or that of the holding company formed in 1930, each of which plaintiff claims in the alternative is the transferor corporation.

The defendant contends that under Section 113(a) the basis of the assets should be the "cost" or the price paid at the execution sales, $700, and that the defendant is being liberal in allowing the basis of the fair market value in 1935 to represent the basis of the holding company in 1930, as there was no evidence that the basis in 1930 to the holding company was of greater value.

The difference in these two contentions as to the basis of the assets caused the defendant to disallow $13,355.63 annual depreciation and to place that amount under net income, reducing the excess profit tax credit and causing the claimed deficiency.

There is no question but that the action under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, in 1935 was a bona fide plan of reorganization approved by the court having jurisdiction of the proceedings and that the transfer of the property to the plaintiff was made pursuant to that plan. The Court is satisfied that the reorganization was tax free under Section 112 (b)(10) and that the basis of the assets in the hands of the plaintiff taxpayer under Section 113(a)(22) is the same as it would be in the hands of the transferor corporation.

The question, then, is whether the basis of the Delaware corporation or of the intermediate holding company is the proper basis. This decision must be resolved by reconciling the facts of this case under either the Limestone or the Marlborough case, infra, both cases decided the same day, Mr. Justice Douglas speaking for the court. The facts of the case at bar place it more in between these two cases than under either one.

To hold that the basis of the Delaware corporation is proper, this case must be controlled by Helvering, Commissioner of Internal Revenue v. Alabama Asphaltic Limestone Co., 1942, 315 U.S. 179, 62 S.Ct. 540, 86 L.Ed. 775; Palm Springs Holding Corp. v. Commissioner of Internal Revenue, 1942, 315 U.S. 185, 62 S.Ct. 544, 86 L.Ed. 785; Warwick Hotel, Inc., v. United States, D. C., 69 F.Supp. 242, affirmed 5 Cir., 1945, 158 F.2d 961.

1. Title 26 U.S.C.A. § 112(b) (10): "Gain or loss not recognized on reorganization of corporations in certain receivership and bankruptcy proceedings. No gain or loss shall be recognized if property of a corporation (other than a railroad corporation, as defined in section 77m of the National Bankruptcy Act, as amended) is transferred, in a taxable year of such corporation beginning after December 31, 1933, in pursuance of an order of the court having jurisdiction of such corporation—

"(A) in a receivership, foreclosure, or similar proceeding, or

"(B) in a proceeding under section 77B or Chapter X of the National Bankruptcy Act, as amended,

to another corporation organized or made use of to effectuate a plan of reorganization approved by the court in such proceeding, in exchange solely for stock or securities in such other corporation."

2. Title 26 U.S.C.A. § 113(a) (22): "Property acquired on reorganization of certain corporations. If the property was acquired by a corporation upon a transfer to which section 112(b) (10), or so much of section 112(d) or (e) as relates to section 112(b) (10), is applicable, then, notwithstanding the provisions of section 270 of the National Bankruptcy Act, as amended, the basis in the hands of the acquiring corporation shall be the same as it would be in the hands of the corporation whose property was so acquired, increased in the amount of gain recognized to the corporation whose property was so acquired under the law applicable to the year in which the acquisition occurred, and such basis shall not be adjusted under subsection (b) (3) by reason of a discharge of indebtedness pursuant to the plan of reorganization under which such transfer was made."

To hold that the basis of the holding company is proper, this case must be controlled by Marlborough House v. Commissioner, 1942, 315 U.S. 189, 62 S.Ct. 537, 86 L.Ed. 784; Harbor Building Trust v. Commissioner, 1951, 16 T.C. 1321.

The test of the Limestone case, supra, was that of relating the reorganization back to the time when the debtor was insolvent and the creditors took effective command of the property. In the Limestone case the only creditors were unsecured noteholders who formed a creditors committee whereas in the instant case there were two sets of creditors, the holding company, representing the unsecured creditors, and the bondholders who shortly thereafter took possession of the property and operated it until the formal petition in bankruptcy under Section 77B was filed.

To properly apply the Limestone case, the action by both classes of creditors must be considered as separate steps integrated into a single plan of reorganization. In the Limestone case the plan of reorganization was made and the separate steps then taken as a part of that plan. In the instant case the separate steps were taken independently by two classes of creditors who later joined in a formal reorganization. The real issue, then, is whether this action by the unsecured creditors is to be considered as an integrated step of the reorganization or as an event severing the continuity of interest as an intervening conveyance, placing this case under the Marlborough case, supra.

The Palm Springs case, supra [315 U.S. 185, 62 S.Ct. 546], applies the Limestone case under different facts, holding that the "legal procedure employed by the creditors is not material" and that the "critical facts are that the old corporation was insolvent and that its creditors took steps to obtain effective command over its property." This doctrine was applied to a factual situation more similar to the case at bar by Warwick Hotel, Inc., v. United States, supra, involving a default under a first and second mortgage. After the trustee under the first mortgage gave notice of default and was struggling during a season of depression to preserve the property, the trustee under the second mortgage gave notice of default, foreclosed and sold the property at public sale. The property was then transferred to a holding company. The court held that the subsequent proceedings taken under the first mortgage constituted a reorganization.

In the instant case, although the facts are necessarily different, the surrounding circumstances involving two classes of creditors, a season of depression, a foreclosure and sale by the creditors of second preference, transfer of property to a holding company and a reorganization by creditors of first preference are such that the Warwick case is controlling. The facts of this case disclose no intervening "mesne conveyances" or conveyances of property to an individual not covered under corporate reorganization provisions as were present in the Marlborough case.

The case of Harbor Building Trust v. Commissioner, supra, construing a reorganization under Section 112(b)(10), involved many similar facts. The Harbor Trust Company, constructed with a cost basis of $1,664,660, had a first, second and third mortgage. The third mortgagee foreclosed in April of 1928 and operated the property for twenty-seven months. The first mortgagee took possession in 1930 and operated the property until 1939, at which time there was a reorganization. Because of the twenty-seven month gap with several conveyances of the property, the fact that the old corporation was dissolved in 1932 and not made a party to the 1939 reorganization and the further fact that the old corporation was not insolvent as to the holders of the first mortgage at the time that it was insolvent as to the holders of the third mortgage at the 1928 foreclosure sale, placed the Harbor case under the Marlborough rather than the Limestone case.

In the instant case the unsecured creditors foreclosed and held the personal property from August 28, 1930, and the real property from September 22, 1930, until November 1, 1930, when the trustee under the first mortgage took possession. There is no evidence that the old corporation was dissolved although it was not a party to

the reorganization, but there is evidence that the old corporation was insolvent and in default as to the holders of the first mortgage at the time of the foreclosure sale.[3] Thus the Limestone case may be applied, there being no gap as found in the Harbor Building Trust case. The first mortgage bondholders owned the equity in the property when the unsecured noteholders foreclosed. The continuity of interest between the Delaware corporation and the petitioner has been maintained, the old corporation being insolvent as to the bondholders at that time.

The Court having reviewed these facts is of the opinion that the Limestone doctrine as applied by the Warwick case controls this case and that the basis of plaintiff corporation should relate back to the basis of the original Delaware corporation.

Judgment will be entered in conformity with the foregoing opinion.

---

3. Par. 7, Agreed Statement of Facts, and affidavit of L. B. Stevens dated March 23, 1953.